250 S.W.2d 355 (1952)
RICHARDSON et al.
v.
KUHLMYER et al.
No. 42854.
Supreme Court of Missouri, Division No. 1.
July 14, 1952.
*357 Gresham, Hizer & Boughan, Walter J. Gresham, Kansas City, for appellants.
Rex Parr, Kansas City, for respondents.
COIL, Commissioner.
Plaintiffs-respondents brought an action to partition improved real estate, located in Jackson County, equally among plaintiffs and the three individual defendants, and to establish an equitable lien against the defendants' shares for improvements made and for other expenditures.
Defendants-appellants, the heirs of Edith A. McBride and the administrator of her estate, by answers and counterclaims, denied that plaintiffs had any title to or interest in the property, alternatively claimed offsets against the plaintiffs' asserted equitable lien, and sought a judgment for $4,500 and asked that it be declared a lien against any interest plaintiffs might have in the real estate.
At the time suit was filed, plaintiffs were husband and wife. Prior to the suit, plaintiff husband had conveyed to plaintiff wife his interest in the real estate. During the pendency of the suit they were divorced.
The essential facts are undisputed. The real estate was conveyed to plaintiff William A. Richardson and Edith A. McBride by a special warranty deed dated January 31, 1946. The named grantees were William A. Richardson and Edith A. Richardson, husband and wife. These grantees were in fact not husband and wife at the time and were never married. They, at the time, intended to be married. Grantee Edith A. Richardson was, at the time of the conveyance and at all times thereafter until her death, Edith A. McBride, mother of the three individual defendants. At the time of the conveyance, the property was subject to a first deed of trust securing a note for $1,474, and on March 30, 1946, the grantees further encumbered the property for $252 evidenced by a note secured by a second deed of trust. The last mentioned note was paid on August 1, 1947, and the second deed of trust released. Edith A. McBride died February 11, 1950. At the time of her death, the balance due on the note secured by the first deed of trust was $735.77.
The special warranty deed to William A. Richardson and Edith A. McBride (there described as Edith A. Richardson) was not in evidence. Plaintiffs, in their petition, however, take the position that the grantees in the deed, even though described as husband and wife, being unmarried, were in fact tenants in common. We shall, therefore, consider that William A. Richardson and Edith A. McBride were cotenants. Defendants made certain contentions to the contrary which we shall notice hereinafter. Plaintiffs contended that upon the death of Edith A. McBride her heirs (the three children of Edith A. McBride) became tenants in common with plaintiff *358 William A. Richardson, and that William A. Richardson owned an undivided one-half interest and each of the individual defendants owned an undivided one-sixth interest.
Plaintiff William A. Richardson, to support his claim to certain credits allegedly chargeable against defendants' interests, testified (over objection on the ground that he was incompetent under RSMo.1949, § 491.010, V.A.M.S.) that he made a down payment on the property of $250; that he paid the $252 note secured by the second deed of trust; that he made payments of $738.23 on the note secured by the first deed of trust; and that he expended $1,245.46 for improvements while he and Mrs. McBride occupied the property. Co-plaintiff Molly Faye Richardson, who at the time she testified had divorced William A. Richardson and had restored her former name of Miller, testified that after William A. Richardson conveyed the property to her, she had made monthly payments totaling $220 on the note secured by the first deed of trust and had, in December 1950, paid $22.54 taxes on the property.
Other testimony related to the value of personal property which was in the house occupied by William A. Richardson and Mrs. McBride at the date of her death. It was agreed that Edith A. McBride, during her lifetime, had taken out a $2,500 life insurance policy in which she named William A. Richardson as beneficiary, describing him therein as her husband. It was further agreed that the proceeds of this policy (apparently $2,500) were paid to William A. Richardson upon the death of Mrs. McBride.
Testimony was heard on September 7, 1950, and the cause was taken under advisement. On January 24, 1951, a pleading was filed denominated "Interplea of Administrator of Edith A. McBride, Decd." by which, apparently without objection, Daniel A. McBride, as the duly appointed administrator of the estate of Edith A. McBride, deceased, intervened and adopted the pleadings of the individual defendants and prayed judgment against plaintiffs for $4,500. The $4,500 claimed consisted of two items, viz., $2,500, the proceeds of the insurance policy, and $2,000, the averred value of Edith A. McBride's personal property allegedly wrongfully converted by plaintiffs after her death.
The trial court found and adjudged that plaintiff Molly Faye Richardson (at the time of judgment, Faye Cloyd Miller) and the three individual defendants were tenants in common; that Faye Cloyd Miller was the owner of an undivided one-half interest and that each of the three individual defendants was the owner of an undivided one-sixth interest; that plaintiff William A. Richardson, as the named beneficiary, was entitled to the proceeds of the insurance policy and that defendants had no claim to or interest therein; that William A. Richardson had paid $742.23 on the first deed of trust and $1,245.46 for improvements; that Mrs. Miller, after Mrs. McBride's death, had expended $242.54 for taxes and upon the first deed of trust; that plaintiffs were entitled to credit for $1,115.11, one-half the total of these items; that Mrs. McBride's personal property was worth $500; that plaintiffs had sold some of this property without the knowledge or consent of the administrator or of any rightful owner; that plaintiffs should be charged with $500, the full value of the personal property; that the reasonable rental value of the house was $35 per month and that plaintiffs should be charged with $280, one half the rental value since Mrs. McBride's death; that the total credit to which plaintiffs were entitled was $1,115.11 and the total credit to which defendants were entitled was $780, leaving a $335.11 balance due plaintiffs; that Mrs. Miller, by reason of the conveyance from William A. Richardson, was entitled to receive any credits due William A. Richardson; and that the property was not susceptible of division in kind and should be sold. The court appointed a special commissioner and ordered a sale, awarded Mrs. Miller a $335.11 lien on the net proceeds, and ordered the balance divided on the basis heretofore indicated.
Defendants contend that neither of the plaintiffs has any title to or interest in the property. Defendants urge these propositions: that plaintiff Richardson and *359 Mrs. McBride purchased the real estate at a time when they contemplated marriage; that they intended to and did create a joint tenancy; that there was a presumption that they were married; that the deed to them was not effective because Richardson failed to perform his contract to marry Mrs. McBride. Defendants apparently proceed upon the theory that the property was in fact bought or purchased with Mrs. McBride's separate funds; that the deed to her and Richardson as husband and wife was to be effective only upon their marriage; that Richardson wrongfully failed to perform an agreement to marry; and that therefore Richardson cannot now equitably claim any interest in the property. If this is defendants' theory, and it is as best we may understand, then suffice to say, without reference to what the legal effect would be had these facts been established, that there was no evidence to support such contentions. There was no evidence that the property was purchased with Mrs. McBride's money. There was no evidence that the property was a conditional gift to Richardson. There was no evidence of any contract to marry other than the stipulated fact that the parties intended to marry. There was no evidence of any failure on Richardson's part to perform any sort of an agreement or contract. And certainly it is to the advantage of these defendants to accept plaintiffs' assertion that the deed to Richardson and Mrs. McBride created a cotenancy rather than a joint tenancy. We rule this contention against defendants-appellants.
Defendants further contend that the court erred in permitting plaintiff William A. Richardson to testify that he made a down payment on the property, made payments on the deeds of trust, and expended money for improvements. This contention must be sustained. Section 491.010, RSMo 1949, V.A.M.S., provides in part: "that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, * * * the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, * * *." During Mrs. McBride's lifetime, William A. Richardson could have asserted this same cause of action against her as he has asserted against her heirs. An essential issue involved in either suit would have been and is whether the individual funds of William A. Richardson were used to make the payments in question, and if so, whether such payments were made under circumstances which entitled him to contribution from his cotenant. Lester v. Tyler, Mo.Sup., 69 S.W.2d 633, 638[13-16]. Thus, Mrs. McBride was a party to the same "cause of action" as is in issue and on trial in the instant case. She being dead, William A. Richardson, the other party to the cause of action, was incompetent to testify as to expenditures claimed to have been made from his individual funds and for which he sought an equitable lien. This testimony was proof of Richardson's cause of action which might have been questioned or denied by the deceased "other party." Miller v. Slupsky, 158 Mo. 643, 646, 59 S.W. 990; Roethemeier v. Veith, 334 Mo. 1030, 1036[2], 69 S.W.2d 930, 933[2-4]; Roberts v. Roberts, Mo.Sup., 291 S.W. 485, 487[4-6]; Johnson v. Quarles, 46 Mo. 423, 429. Without this testimony, there was no evidence supporting a claim for any credit due William A. Richardson or his grantee by reason of any transaction prior to Mrs. McBride's death.
Defendants also contend that plaintiffs wrongfully converted certain personal property of Mrs. McBride after her death, and that the court erred in finding that the value of this property was $500 rather than at least $1,500. Plaintiffs say that there was no basis for finding a value of as much as $500 and that the court therefore erred in favor of defendants. Defendants further contend that the court erred in finding that William A. Richardson, as beneficiary in the insurance policy, was entitled to and had rightfully received the proceeds of that policy, and that defendants had no claim to or interest therein.
It is apparent that even if it were established that plaintiffs, or either of them, had wrongfully converted Mrs. McBride's personal property, and even if it were established also that plaintiff William A. Richardson had wrongfully received and *360 was wrongfully holding the proceeds of the insurance policy, nevertheless neither the value of such personalty nor the amount of such proceeds were chargeable as liens against the realty involved or against funds received from its sale. This, because these claims were not in anywise connected with the common property. They were not claims for amounts expended to preserve or improve the realty nor for amounts which in partition proceedings should equitably constitute liens against the land. The circuit court may exercise a wide latitude in the adjustment of equities among the parties to a partition suit. Devoto v. Devoto, Mo.App., 39 S.W.2d 1083, 1084[1, 2]; Lester v. Tyler, supra, 69 S.W.2d 638[9-12]. The equities to be adjusted, however, must of necessity be those which have arisen from or are in some way connected with the real estate to be partitioned; they must be claims relating to the common property. 68 C.J.S., Partition, § 135b, p. 210.
But even though these claims of defendants were not matters for equitable adjustment in the instant partition suit, did the trial court have jurisdiction to adjudicate them as separate and independent controversies upon defendants' counterclaims? S.C.Rule 3.16, supplementing Section 509.060, RSMo 1949, V.A.M.S., provides that a counterclaim may be filed even though it does not arise out of the subject matter of the adverse party's claim. Consequently, defendants could properly file as counterclaims any matured claims they had against plaintiffs at the time of the filing of defendants' first required pleading. Thus the counterclaims, in so far as they seek to recover for the items of personalty, may be treated as claims for a money judgment for wrongful conversion of personal property belonging to Mrs. McBride's estate. But it is apparent that this claim was that of the administrator to the exclusion of the individual defendants. It does not appear that any action for the discovery and recovery of assets had been instituted in the probate court pursuant to the provisions of Sections 462.400 to 462.440, RSMo 1949, V.A.M.S. Thus, an action for conversion was properly brought in the circuit court, at least as to the items of personalty which had been converted and would not be in the possession of plaintiffs in the event an affidavit was filed in probate court pursuant to Sec. 462.400, supra. State ex rel. Lipic v. Flynn, 358 Mo. 429, 437, 438, 215 S.W.2d 446, 450[3, 4], 451[7].
So treating the counterclaim of defendant administrator, the only evidence pertaining to wrongful conversion and the value of the property converted was that plaintiffs sold two articles which it may be inferred belonged to Mrs. McBride at her death: an old refrigerator which was sold for $25 and a lounge which was sold for $10. All other items of personalty which may have been Mrs. McBride's property at the time of her death appear to be in the possession of some of the defendants or remain unclaimed in Mrs. Miller's possession. Defendant administrator makes no claim for the rental value of such items as remain in possession of Mrs. Miller. Consequently, under the evidence, defendant administrator is entitled to a money judgment against plaintiffs for $35. As to any other personalty which should constitute a part of Mrs. McBride's estate, the administrator may, if he chooses, proceed to bring it into the estate by an appropriate proceeding.
We now consider defendants' claims to the $2,500 insurance proceeds. Defendants contend that as Richardson and Mrs. McBride admittedly intended to be married and because he was described in the policy as her husband, it follows that the proceeds constituted a gift to Richardson conditional upon the marriage; that because there was no marriage, the gift did not take effect and Richardson has no right to retain it. But there is no substantial evidence in the record from which it could be reasonably inferred that Mrs. McBride intended that Richardson be the beneficiary only if they were married nor is there any evidence that the failure of the parties to marry was the result of Richardson's breach of an engagement to marry. Defendants say that because Richardson failed in his direct testimony (there was no cross-examination) to explain why he and Mrs. McBride were not married, it may be inferred that Richardson *361 was unable to explain and from this, a further inference may be made that Richardson breached an agreement to marry. The witness was not examined on the subject by his counsel and counsel for defendant chose not to cross-examine. Under the circumstances, failure to voluntarily explain what the agreement was as to marriage or why a marriage did not occur does not support the conclusion that Richardson wrongfully breached an agreement to marry.
The only direct evidence adduced with reference to the insurance policy and its proceeds were the stipulated facts that Mrs. McBride procured a policy of life insurance on her life in the sum of $2,500 naming William A. Richardson as beneficiary and describing him as her husband, and that the proceeds of the policy were paid to William A. Richardson after the death of Mrs. McBride. This evidence wholly fails to support any claim, legal or equitable, to the proceeds, either by the individual defendants or by defendant administrator. The fact that Richardson was named as beneficiary (apparently as sole beneficiary), in the absence of other evidence, entitled him to the proceeds. While Richardson was described as the husband of insured when he was not her husband, this characterization was descriptive only and does not control over the specific designation of him as beneficiary. Walker v. General American Life Ins. Co., Mo.Sup., 141 S.W.2d 785, 787[4] [5, 6] [7] [8].
To summarize: plaintiff Molly Faye Richardson, now Faye Cloyd Miller, is entitled to a credit against the proceeds of the sale of the property in the amount of the payments made by plaintiffs on the first deed of trust and for taxes since the death of Mrs. McBride to the date of judgment. Each individual defendant is entitled to a credit against the proceeds of the sale of one third of one half of the rental value of the property computed at $30 per month from March 1, 1950, to the date of judgment. (The trial court found the reasonable monthly rental of the property to be $35 per month. The only evidence, however, pertaining to rental value was that it would not exceed $30 per month). The trial court on remand, and, if necessary, after further hearing, should compute these respective amounts and determine from them whether plaintiff Mrs. Miller is, or defendants are, entitled to the net credit.
It follows that the decree and judgment in the partition suit should provide that Mrs. Miller owns an undivided one-half interest in the real estate and that defendants Beatrice Kuhlmyer, Dan McBride, and Ben McBride each owns an undivided one-sixth interest therein; for the sale thereof by a special commissioner; for payment from the net proceeds of the sale to the party or parties in whose favor the net credit is determined to be the amount of such net credit; and for the division of the balance of the net proceeds, one half to Mrs. Miller and one sixth each to Beatrice Kuhlmyer, Dan McBride, and Ben McBride.
There was no evidence of the status of Mrs. McBride's estate with reference to assets or claims filed therein. Under Section 528.140, RSMo 1949, V.A.M.S., the order distributing the shares of the sale of the real estate adjudged to the individual defendants should not take effect until Mrs. McBride's estate has been finally settled and all claims fully discharged unless the trial court, upon further hearing, shall be satisfied that personal property or realty other than that here involved is more than sufficient to pay all claims and demands against the estate.
A judgment for $35 should be entered on the counterclaim of the administrator of Mrs. McBride's estate against the plaintiffs.
The judgment is reversed and the cause remanded with directions to enter a decree and judgment in the partition suit and a money judgment on the administrator's counterclaim in accordance with the views herein expressed.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.