Kenneth D. ANDERSON, Respondent,

v.

Bertha STACKER a/k/a Bertha E.
Anderson, Appellant.

No. 46580.

Supreme Court of Missouri,
Division No. 2.

Nov. 10, 1958.

James A. Bell, St. Louis, for appellant.

Cecil Block, St. Louis, for respondent.

BARRETT, Commissioner.

The origin of this cause was that on November 21, 1956, Kenneth D. Anderson instituted an action against Bertha Stacker "a/k/a" (meaning, presumably, "also known as") Bertha E. Anderson. He denominated his action a "Suit In Partition." In his petition he alleged that "plaintiff and defendant were contemplating marriage, but never did marry," but, in the course of their engagement, plaintiff acquired the property known as 4762 Northland Avenue "and in contemplation of said marriage, caused title to said property to be vested in the name of Kenneth B. Anderson and Bertha E. Anderson, his wife." He alleged that the cost of the property was $9,500, that he paid $1,000 down, "and he and the defendant" executed first and second deeds of trust and notes in the sums of $5,950 and $2,550 for the balance of the purchase price. The plaintiff then alleged that he paid with his own funds the sole consideration "for the acquiring of said property," made all payments of taxes and notes secured by the deeds of trust from his own funds, and that the defendant contributed "no part of any of the payments, or to any of the indebtedness against the said property" and that by reason thereof plaintiff "claims and is entitled to the sole interest to the property." He stated, however, "by reason of the fact that plaintiff (he) caused the title of said property to be vested in her name," that she claimed an interest in the property. His prayer for relief was that the court determine and decree the right, title and interest of each of the parties to the property, decree him to be "the sole and only owner," and award such other relief as might be appropriate to the circumstances.

To this petition the defendant, Bertha Stacker, filed an "Answer And Counterclaim." In her answer she admitted that they contemplated but were never in fact married, and she admitted the purchase of the property and the fact of the transfer of the title to them as husband and wife. She denied, however, all the other allega-

tions in his petition. For her cause of action against the plaintiff, presumably as a counterclaim, she called the second part of her pleading "Defendant's Suit In Partition." In that part of her pleading she alleged that she was single and that on August 1, 1942, the plaintiff "wilfully and deceitfully represented to this defendant herein that said plaintiff would marry said defendant and purchase her a home," and thereby induced the defendant to leave her home, come to St. Louis, and "purchase certain real and personal property in the name of Bertha E. Anderson, to conform to her expected married name," and she, believing and relying upon his false representations, entered into a contract to and did purchase property, including 4762 Northland Avenue, and accepted a warranty deed conveying the property to "Kenneth B. Anderson and Bertha E. Anderson, his wife." She alleged that "the plaintiff and defendant jointly occupied said premises until about September 1952." She then alleged that the plaintiff refused to marry her and that but for his false representations she would not have left her former home, advanced part of the purchase money, signed the notes and deeds of trust, paid monthly installments, or have occupied the premises, or have made repairs and improvements on the property. She alleged that the conveyance to them created a tenancy in common, that each claimed a one half interest in the property, and that it could not be divided in kind. Her prayer for relief was that the court enter an order "declaring the right, title and interest of the parties herein, respectively; and for an order of partition and for contribution from the plaintiff, to the real estate."

There was no reply or other responsive pleading to the answer and counterclaim, or to any other pleading for that matter. But, at the conclusion of Kenneth's testimony, there appears in the transcript the statement: "By Leave, pltf. amends petition as per memo. filed. * * * Deft. by Atty. *lodges* with Clerk Count II Damages to Counterclaim. Hearing of cause resumed and progressed, concluded and submitted." The "memo" filed by the plaintiff amended his petition by striking out the title, "Suit in Partition," and inserting in lieu thereof "Suit to Quiet Title." Bertha's Count II to her counterclaim was a claim for $10,000 damages for Kenneth's breach of his promise to marry her. When this latter document was tendered the court said, "I'll take it with the case, gentlemen."

In the course of Bertha's testimony the court refused to hear evidence tending to support her claim of Kenneth's breach of promise of marriage. And, incidentally, the notes concerning the second deed of trust were referred to, but neither the deed by which the property was conveyed, nor the deeds of trust and notes, were offered in evidence and there was no prayer for the reformation or cancellation of them and the court's decree does not purport to deal with them in any manner. At the conclusion of Bertha's testimony, there were but two witnesses, Kenneth and Bertha, the court said, "I'll take the case as heard and submitted, gentlemen." The court entered a decree in favor of the plaintiff, Kenneth, "for the property mentioned and described in the petition, and doth further find that the defendant has no right, title or interest in said real estate," and, accordingly, the court quieted the title to the property in the plaintiff. In its decree and judgment the court dismissed Bertha's counterclaim and suit in partition, and, in addition, as to Count II of her counterclaim for damages for breach of promise to marry, the court decreed that it be "stricken from the files without prejudice."

Bertha has appealed from the judgment and decree and urges that the court was in error in all respects in thus disposing of the entire cause. Unfortunately and unhappily for all concerned, the respondent has not filed a brief in this court. Some of Bertha's complaints, however,

have but little to do with the essential merits of the appeal. One of her complaints is of the court's failure to "prepare and file a brief opinion containing a statement of the grounds for its decision * * * and may, or if specifically requested by counsel, shall, include its findings on any of the principal controverted fact issues." V.A.M.S. § 510.310, subd. 2. But it does not appear in the transcript that Bertha's counsel, or any one else, asked the court to make a finding of fact; furthermore, this court-tried case must be considered anew in this court "upon both the law and the evidence as in suits of an equitable nature" (V.A.M.S. § 510.310, subd. 4), and in that circumstance the court's failure to make a finding of fact would not constitute reversible error. Beyer v. Schlenker, Mo., 181 S.W. 69; McBride v. Mercantile-Commerce Bank & Trust Co., 330 Mo. 259, 48 S.W.2d 922. As stated, the deed was not reformed and there was no finding or decree as to the notes and deeds of trust (Collins v. Shive, Mo., 261 S.W.2d 58), but, as indicated from the summary of the pleadings and as will appear from the proof and the essential issues involved, the pleadings stated and the parties submitted to the court a controversy to which the quiet title statute (V.A.M.S. § 527.150) is applicable. Kanan v. Wright, 307 Mo. 284, 270 S.W. 650; Hamilton v. Linn, 355 Mo. 1178, 200 S.W.2d 69. Beyond question the deed was valid and created in Kenneth and Bertha a tenancy in common (annotations, 31 A.L.R. 2d 1255, 1311; 92 A.L.R. 1420), but the meritorious question in this action by the parties, by one to quiet the title and by the other to partition and thus terminate the tenancy (86 C.J.S. Tenancy in Common § 15, p. 376), is the nature and extent of their respective rights in the property.

Upon the trial Kenneth was less than candid and attempted to deny that he "agreed" or that it was "his idea" that the property be conveyed to him and to Bertha as husband and wife. The fact was, as he alleged in his petition, that *"plaintiff * * in contemplation of said marriage, caused title to said property to be vested in the name of Kenneth B. Anderson and Bertha E. Anderson, his wife."* The background and circumstances were that Kenneth and Bertha became acquainted in 1933, when Bertha first lived in St. Louis. In 1944 she moved to Chicago where she lived and worked until February 1948. Meanwhile, Kenneth and Bertha did not see one another until her grandfather's funeral at Collinsville, Illinois, when, as Kenneth says, he attended his wake. He admits that upon her return to Chicago he paid her bills there, "sent for her," and she came back to St. Louis in February 1948. Her recollection of their renewed relationship is probably more vivid than his, and she said, "When I came back to bury my grandfather, I saw him and he told me if I would come back he would marry me. He told me he should have married me the first time before I left; and he told me he would marry me and buy me a home. That's what he told me. So I went back to Chicago after the funeral and I stayed until he sent for me in February."

After her return to St. Louis and for the ensuing four and one half years Kenneth and Bertha lived together as husband and wife, all the while engaged and in anticipation of marriage. Kenneth was a full-time postal employee, with an annual salary of $4,400, and a part-time clay moulder with Evans & Howard Sewer Pipe Company, from which he said he received about $2,900 annually. Bertha worked at a laundry and was paid $35 a week. They lived together in one or more apartments on Delmar and in 1949 the property at 4762 Northland was acquired and they lived there together as husband and wife until "Labor Day night, 1952" when Kenneth left and subsequently married some one else. Bertha has since lived in the property with a niece and "the onliest time" Kenneth has ever been back was to insult and run off a

tenant. No relief was requested concerning the fact, but in addition to purchasing the house Kenneth and Bertha purchased about $1,500 worth of furniture and he purchased a 1948 Cadillac automobile.

■ In these detailed circumstances "A conveyance to grantees as husband and wife, although the parties were knowingly living in meretricious relations, will, nothing being shown to warrant a different conclusion, ordinarily be construed to create a tenancy in common, and the property so conveyed will be apportioned, in partition or similar proceedings, on that basis, the apportionment not always being in equal shares but according to the proportionate contribution of each of the grantees toward the acquisition of the property." Annotation, 31 A.L.R.2d loc. cit. 1311. Bertha testified that she gave Kenneth $500 she had saved to apply on the down payment, and she said, "We were pooling our resources together." She testified that every time she got paid she gave Kenneth part of her earnings to apply on the payments, "At one time he requested for me to bring it and put it in a box that we had. The first week he was giving it to me, and then he stopped." But Kenneth denied that she contributed any sum to the purchase price or to the payment of the notes, and in the absence of cogent proof to the contrary the trial court's finding in this regard is of necessity deferred to. While it is admitted that they lived together as husband and wife, Bertha did not testify that she performed services such as a woman living with a man ordinarily renders and thus give the court an opportunity to say whether she had thereby contributed to their joint enterprise. Bracken v. Bracken, 52 S.D. 252, 217 N.W. 192, 194. The best that can be said of her position is the dicussion they had when they had when he told her about the house: "He told me he was going to buy a home. He said 'I'm going to get a home for you.' I told him, I said, 'Before you get a home, let's get the marriage license first.' He said, 'That's all right; we're going to get married and we'll buy the home.' So he came and he got me off my job; I was working down on Ninth Street. We first went to look at one on St. Louis Avenue, and before he could get the earnest money and put it down someone else purchased the house. Then he found this one and he carried me out there and he asked me * * * 4762 Northland. And then he asked me did I like it. I told him, 'Yes, but I would rather have the license before we went in to purchase it.' So he said, 'That's all right, we're going to get married.' So I went back to work." Upon this record it may only be said, in accordance with the general rule, that the trial court has found and apportioned the interests of the parties proportionately to their contributions to its acquisition. Richardson v. Kuhlmyer, Mo., 250 S.W.2d 355; Bracken v. Bracken, supra; Merit v. Losey, 194 Or. 89, 240 P.2d 933; West v. Knowles, 50 Wash.2d 311, 311 P.2d 689; Collins v. Norris, 314 Mich. 145, 22 N.W.2d 249; Perrin v. Harrington, 146 App.Div. 292, 130 N.Y.S. 944; In re Meyron's Estate, 6 Misc. 2d 673, 164 N.Y.S.2d 443.

■ Kenneth admits, since he left Bertha in 1952, that he has not contributed any sum for repairs and improvements on the house and Bertha's testimony that she has advanced $300 or more for that purpose is undisputed and so the court did err in not adjudicating that item. Richardson v. Kuhlmyer, supra. There was no request for a separate trial of separate issues and the court excluded any proof as to Bertha's claim for breach of promise of marriage, but the court's reasons or justification for dismissing that claim are not readily apparent, it did state a cause of action and there was neither a denial nor an affirmative defense. V.A.M.S. §§ 509.420, 510.180, 511.-040. Subject to an adjustment for repairs and improvements the judgment quieting the title to the real property in Kenneth is affirmed and remanded; the judgment dismissing her counterclaim for damages for breach of promise of marriage is reversed and remanded with directions to reinstate the pleading.

BOHLING and STOCKARD, CC. concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All concur.