**Mary CLARK, Respondent,**

v.

**John B. DADY, Appellant.**

**No. WD 61722.**

Missouri Court of Appeals,
Western District.

April 6, 2004.

William L. Voorhies, Kansas City, for Respondent.

Rocky T. Cannon, Raytown, for Appellant.

Before: BRECKENRIDGE, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

John Dady appeals from the judgment of the Circuit Court of Platte County for the respondent, Mary Clark, on her suit to partition personalty, specifically, a mobile home. The judgment awarded the respondent the mobile home as her "sole property," even though it was jointly titled in both parties' names and both parties were obligated on the promissory note, which financed the balance of the purchase price owed.

The appellant raises three points on appeal. In Point I, he claims that the trial court erred in awarding the respondent the mobile home as her sole property because it misapplied § 528.030 [1] and Rule 96 [2] by not ordering it sold and partitioning the proceeds, reflecting the respective interests of the parties. In Point II, he claims that the trial court, in partitioning the mobile home, erred in calculating the

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. All rule references are to Missouri Rules of Civil Procedure, 2003, unless otherwise indicated.

respective interests of the parties therein because it failed to "credit [him] for the mobile home down payment, for one-half of the value of the mortgage used to finance the mobile home, for money spent improving the mobile home, and for one half the rental value of the mobile home." In Point III, he claims that the trial court plainly erred in:

> not ordering a partition by sale of the mobilie [sic] home, because the totality and cumulative effect of multiple errors in the judgment could have been prevented by a partition by sale of the mobile home so that Dady was prejudiced as evidenced by the adverse judgment of the trial court.

We reverse and remand.

## Facts

In 1998, the parties purchased a Holly Park mobile home for approximately $35,848, $4,000 down with the balance being financed by Greentree Financial. The debt to Greentree was evidenced by a promissory note that was jointly executed by the parties. At the time of trial, the note was held by Greentree's successor in interest, Conseco Finance Servicing Corp.

For a time, the parties resided together in the mobile home. During that time, the note payments on the mobile home of $435 per month were being made, but it is unclear from the record by whom. Sometime in August 2001, the appellant voluntarily moved out of the mobile home. The respondent, who then enjoyed exclusive possession of the mobile home, made the note payments, as well as monthly lot rental payments of $175 and monthly utility payments.

On January 22, 2002, the respondent filed a petition in the Circuit Court of Platte County to partition the mobile home, which alleged, inter alia, that she and the appellant were "joint owners" of the mobile home, asking that it be partitioned "between [them] according to their respective interests therein and that [the respondent] be found to be the rightful owner of said personal property due to the care and amount of money that she has contributed to the purchase of said property." The petition further asked of the court:

> that the property and the interested parties thereto be ordered by the Court in accordance with law relating to the sale and disposition of property and partition suits, and that the Director of Revenue be ordered to place the above described property in the sole name and ownership of [the respondent] and for all other Orders as the Court deems just and proper in the premises.

The case was tried to the court on July 10, 2002. The respondent was represented by counsel, while the appellant proceeded *pro se*. The respondent testified at trial that when she and the appellant purchased the mobile home in 1998, she had transferred money from her own individual retirement account to a bank account in the appellant's name, and that money was used to make the down payment. The respondent further testified that there was a balance of $31,964.19 due on the note financing the mobile home. The appellant testified that he contributed to the down payment on the mobile home, claiming that the money which the respondent transferred from her IRA account was actually used to purchase some motor vehicles. He also testified that he had improved the mobile home by adding a $10,000 deck and mud room, a $1,500 barn, and $2,000 worth of landscaping, plus contributing "hours of painting," for which he was requesting reimbursement in the partition action.

On July 26, 2002, the trial court entered a judgment awarding the mobile home to the respondent "as her sole property . . .

free and clear of any lien, claim, right or demand of [the appellant]." The judgment also ordered the Director of Revenue to cause the mobile home to be titled in the sole name of the respondent, subject to any perfected liens. In addition, the judgment recited that the respondent "is entitled to reimbursement, from [the appellant] of $3,050 representing one-half of the lot payments and one-half of the loan payments which [the respondent] made on the [mobile home] since August, 2001."

This appeal followed.

## Standard of Review

■ Our review of a partition action is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Cmty. Bank of Chillicothe v. Campbell*, 870 S.W.2d 838, 840 (Mo.App.1993). Thus, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

## I.

In Point I, the appellant claims that the trial court erred in awarding the respondent the mobile home as her sole property because it misapplied Chapter 528 and Rule 96 by not ordering it sold and partitioning the proceeds, reflecting the respective ownership interests of the parties in the property. In Point II, he claims that the trial court, in partitioning the mobile home, erred in calculating the respective ownership interests of the parties therein because it failed to "credit [him] for the mobile home down payment, for one-half of the value of the mortgage used to finance the mobile home, for money spent improving the mobile home, and for one half the rental value of the mobile home." Although denominated as two separate points, Point II is nothing more than an extension of Point I. Reading the two points together, the appellant is simply claiming that the trial court failed to properly apply the law of partition in determining the parties' ownership interests in the mobile home and ordering it distributed in kind, *in toto*, to the respondent. Consequently, we address both points together.

■ Partition is an *in rem* proceeding, *Cmty. Bank*, 870 S.W.2d at 841, governed by Chapter 528 and Rule 96. Section 528.030 [3] and Rule 96.01 authorize joint tenants and tenants in common to bring an action in partition. In a partition action, the "court shall determine the interests of the parties and order partition in kind or the sale of the land." Rule 96.08. The subject property of the partition action can be ordered sold and the proceeds distributed where partition in kind "cannot be made without great prejudice to the parties." § 528.340 and Rule 96.18. The proceeds of the partition sale are to be used first to pay the costs and expenses of the proceedings, with the remainder to be distributed to the parties based on their respective ownership interests. § 528.460 and Rule 96.27. Partition of personal property may be had in the same manner as a partition of real property. § 528.620 and Rule 96.32. Thus, partitioning of personal property in kind is authorized, although in many cases it is impossible due

**3.** Some cases mistakenly hold that § 528.030 authorizes the trial court to partition jointly held property in kind or order it sold and the proceeds distributed. *See e.g., Lemay v. Hardin*, 48 S.W.3d 59, 62 n. 5, n. 9 (Mo.App. 2001). However, that section, by its express terms, only authorizes the filing of a petition in partition. The authority in Chapter 528 for the trial court's ordering partition in kind or a sale and distribution of proceeds in a partition action is actually found in §§ 528.260, 528.280, and 528.310, as to a partition in kind, and §§ 528.340 and 528.460, as to a sale and distribution of proceeds.

to its character. *Halferty v. Karr,* 188 Mo.App. 241, 175 S.W. 146, 147 (1915).

In a partition action, the trial court only has two options: (1) partition the property in kind; or (2) order the property sold and the proceeds divided based on the respective interests of the parties in the property. Rule 96.08. Here, the trial court ordered that the mobile home jointly owned by the parties be awarded to the respondent in kind, in its entirety. The appellant contends that as a matter of law such an award is not authorized by the law of partition, citing *Lemay v. Hardin,* 48 S.W.3d 59 (Mo.App.2001). And, in the alternative, he argues that even if such an award is permitted, the record does not support such an award here.

■ In ordering the partition of property, the trial court is required to "determine the interests of the parties" in the property. Rule 96.08. In that regard, the record reflects that the mobile home was titled in both parties' names. However, they were not married when they purchased it such that they did not take it as tenants by the entirety. *Montgomery v. Roberts,* 714 S.W.2d 234, 235–36 (Mo.App.1986). In addition, the certificate of title to the mobile home did not include a right of survivorship provision, such that the parties did not take the mobile home as joint tenants. *Heintz v. Hudkins,* 824 S.W.2d 139, 142 (Mo.App.1992). Thus, they took title as tenants in common. § 442.450.

In *Anderson v. Stacker,* the Missouri Supreme Court was confronted with the issue of how to apportion property held as tenants in common. 317 S.W.2d 417, 421 (Mo.1958). There, real property was titled in the parties' joint names as husband and wife in contemplation of marriage, which never occurred. In deciding the issue presented, the Court held that:

[a] conveyance to grantees as husband and wife, although the parties were knowingly living in meretricious relations, will, nothing being shown to warrant a different conclusion, ordinarily be construed to create a tenancy in common, and the property so conveyed will be apportioned, in partition or similar proceedings, on that basis, the apportionment not always being in equal shares but according to the proportionate contribution of each of the grantees toward the acquisition of the property. *Id.* We read the Court's holding for the proposition that as to the particular conveyance in question, it was viewed as creating a tenancy in common, with the property to be apportioned "on that basis," in accordance with the contribution of the parties toward the acquisition of the property. However, the Court did not expressly state the parameters of the basis referenced, *i.e.,* equal shares. Rather, it simply stated that "the apportionment [would] not always [be] in equal shares but according to the proportionate contribution of each of the grantees toward the acquisition of the property."

While the Court's holding in *Anderson* does not speak in terms of a presumption, it is, at least, arguable that implicit in the holding is the creation of a rebuttable presumption that tenants in common are to take in equal shares where the conveyance is silent as to their respective interests. *See Bass v. Rounds,* 811 S.W.2d 775, 782 (Mo.App.1991) (holding that "where the tenants in common agreed at the time of purchase to take in certain proportions, that agreement would be respected"). However, in *Brooks v. Kunz,* 597 S.W.2d 183, 187 (Mo.App.1980) (*Brooks I*), the Eastern District of this court held otherwise, citing *Anderson* and *Keller v. Porchey,* 560 S.W.2d 257 (Mo.App.1977), stating:

There is authority for holding that where two or more persons take as ten-

ants in common under an instrument which is silent in regard to their respective shares, there is a presumption, albeit rebuttable, that their shares are equal, 20 Am.Jur.2d, Cotenancy and Joint Ownership § 118, p. 216. Although supported by logic and fairness this presumption has not been recognized in Missouri cases, which require evidence of the proportionate contribution of each of the grantees toward the acquisition of the property. *Anderson v. Stacker; Keller v. Porchey, supra.* While the Court in *Anderson* clearly held that:

> [a] conveyance to grantees as husband and wife, although the parties were knowingly living in meretricious relations, will, nothing being shown to warrant a different conclusion, ordinarily be construed to create a tenancy in common, and the property so conveyed will be apportioned, in partition or similar proceedings, on that basis, the apportionment not always being in equal shares but according to the proportionate contribution of each of the grantees toward the acquisition of the property,

we do not read its holding, as did the *Brooks I* court, for the proposition that the Court was rejecting the rebuttable presumption found at 20 Am.Jur.2d, Cotenancy and Joint Ownership § 118, p. 216. As noted, *supra,* if anything, we think the Court's holding would support the contrary. From the court's perspective in *Brooks I,* the best that could be said is that *Anderson* did not address the existence or non-existence of the presumption. Hence, we believe that *Brooks I* was wrong in holding that *Anderson* rejected the rebuttable presumption cited.

In *Atkinson v. Dasher,* 588 S.W.2d 215, 216–17 (Mo.App.1979), which was decided prior to *Brooks I,* this court, in affirming the trial court's judgment in partition, rec-ognized the presumption stated at 86 C.J.S., Tenancy in Common, § 18, pp. 378–379, which is almost identical to the presumption stated at 20 Am.Jur.2d, Cotenancy and Joint Ownership § 118, p. 216: "Where a conveyance to two or more persons is silent as to the interest of each, their interests are presumed to be equal, *but the presumption is rebuttable by evidence to the contrary, such as evidence showing the contributions of joint purchasers to have been unequal." Atkinson,* 588 S.W.2d at 216. In recognizing the presumption, this court did not rely on *Anderson,* but simply recognized the presumption as the rule concerning the "respective interests of cotenants," citing 86 C.J.S., Tenancy in Common, § 18, pp. 378–379 as authority. This court did, however, rely on *Anderson* for the proposition that:

> joint purchasers of an estate hold shares therein in proportion to their contribution to the purchase price, but it has been held that proof of the fact that at the time of purchase vendees contributed unequal sums in cash is not proof that they took or intended to take in that proportion, where such payment in cash was only part of the total consideration.

*Atkinson,* 588 S.W.2d at 216–17.

This court has consistently upheld the existence of the presumption of equality of shares first recognized in *Atkinson, see Lemay,* 48 S.W.3d at 63; *Cmty. Bank,* 870 S.W.2d at 841, while the Eastern District has been inconsistent on the issue, *see Brooks v. Kunz,* 637 S.W.2d 135, 138 (Mo. App.1982) (*Brooks II* ); *Brooks [I],* 597 S.W.2d at 187 (holding that there is no presumption); *Matter of Estate of Snyder,* 880 S.W.2d 596, 599–600 (Mo.App.1994); *Montgomery,* 714 S.W.2d at 236 (holding that there is a presumption). In recently recognizing the existence of the presumption, the Southern District, in *Christen v.*

*Christen,* 38 S.W.3d 488, 492 (Mo.App. 2001), relied on *Montgomery.* And, this court, in affirming the existence of the presumption in *Lemay,* cited *Christen. Lemay,* 48 S.W.3d at 63.

While there appears to be some confusion in the Eastern District concerning the existence of a rebuttable presumption of equality of interests among co-tenants in a partition action, as discussed, *supra,* the issue is well settled in this district, and we see no reason not to follow this court's own precedent in that regard. Hence, in determining whether the trial court, here, erred in determining the respective interests of the parties in partitioning the mobile home, we begin with the rebuttable presumption that they held equal shares. And, thus, unless the record supports rebuttal of the presumption, the trial court erred in partitioning the mobile home by ordering that the respondent be awarded the whole in kind.

■ In partition, the presumption of equal shares of tenants in common may be rebutted by proof of a disproportionate contribution of each party toward the acquisition of the property, *Lemay,* 48 S.W.3d at 63; *Christen,* 38 S.W.3d at 492; *Estate of Snyder,* 880 S.W.2d at 599; *Bass,* 811 S.W.2d at 780; *Montgomery,* 714 S.W.2d at 236, provided there is neither a family relationship among the co-tenants nor any evidence of donative intent on the part of those who contributed more than their pro rata amounts towards the purchase price. *Lemay,* 48 S.W.3d at 63; *Christen,* 38 S.W.3d at 492; *Bass,* 811 S.W.2d at 780. Contribution toward the acquisition of property includes not only any cash down payment, but any liability incurred in financing the balance of the purchase price. *Bass,* 811 S.W.2d at 781–82; *Vickers v. Vickers,* 762 S.W.2d 482, 483 (Mo.App.1988); *Atkinson,* 588 S.W.2d at 216–17.

■ At trial, the parties agreed that they purchased the mobile home for $35,848, with $4,000 down. However, they disagree as to who made the down payment. The appellant contended that he contributed to the down payment; the respondent contended that she paid the full amount. The trial court was free to believe the respondent's testimony, *Thomas v. Lloyd,* 17 S.W.3d 177, 187 (Mo.App. 2000), which it did. Thus, with respect to the down payment only, the record supports a finding that the appellant did not contribute anything to the acquisition of the mobile home.

■ As to the balance of the purchase price of the mobile home, the parties agreed at trial that they jointly obligated themselves for payment of the balance by executing a promissory note in favor of Greentree Financial for $31,848 ($35,848–$4,000). As a result of the appellant's being jointly obligated on the note, he is considered to have contributed $15,924 to the acquisition of the mobile home ($31,848 ÷ 2). *Bass,* 811 S.W.2d at 781–82; *Vickers,* 762 S.W.2d at 483; *Atkinson,* 588 S.W.2d at 216–17. Hence, inasmuch as the record discloses that the parties were not related and there is nothing to suggest that there was any donative intent on the appellant's part with respect to his joint liability for the financed amount of the purchase price, the appellant would have a 44.42% ($15,924/$35,848) share in the mobile home, for purposes of partition. And, thus, the trial court erred in awarding the mobile home, in kind and in its entirety, to the respondent, requiring us to reverse.

■ Pursuant to Rule 84.14, if we find that the trial court's judgment was in error, we are, if possible, to finally dispose of the case, including, where appropriate, giving "such judgment as the [trial] court ought to give." Although Rule 84.14 al-

lows us to enter the judgment that should have been entered by the trial court, we can only do so where the record permits, *Coffman v. Powell,* 929 S.W.2d 309, 312 (Mo.App.1996), and here, the record is not sufficiently developed on the issue in question to allow us to enter judgment with any degree of confidence in its reasonableness, fairness, and accuracy. Here, given the nature of a partition suit, we cannot make a determination of whether to enter judgment disposing of the case or remanding it for further proceedings without first addressing whether the parties are entitled to reimbursement for various expenditures they allegedly made on the property. Both parties made various claims below for reimbursement for expenditures, including expenditures for finance payments, improvements, and maintenance. In addition, the appellant sought credit for the rental value of the mobile home during the respondent's exclusive possession.

 It is well settled that in a partition proceeding, the parties are entitled to reimbursement for expenditures with respect to the property for taxes, insurance and necessary repairs and improvements. *Hahn v. Hahn,* 297 S.W.2d 559, 567 (Mo. banc 1957); *Cmty. Bank,* 870 S.W.2d at 841; *Bass,* 811 S.W.2d at 782; *Hartog v. Siegler,* 615 S.W.2d 632, 636 (Mo.App. 1981). As to improvements, reimbursement is available where they are "made in good faith, are of a necessary and substantial nature, materially enhance the value of the property, and the circumstances show that it would be equitable to do so." *Hartog,* 615 S.W.2d at 636; *see also Cmty. Bank,* 870 S.W.2d at 842. In addition to expenses for taxes, insurance, improvement, and repairs, the parties are entitled to reimbursement for finance or mortgage payments made on the property. *Hahn,* 297 S.W.2d at 567; *Bass,* 811 S.W.2d at 782. In the case of a partition in kind, reimbursement for expenses is effectuated by placing an equitable lien on the property partitioned to the other party. *Hahn,* 297 S.W.2d at 567. And, in the case of a partition sale, reimbursement is effectuated by offsetting the reimbursable expenditures against the sale proceeds partitioned to the other party. *Bass,* 811 S.W.2d at 782; *Cmty. Bank,* 870 S.W.2d at 842; *Hartog,* 615 S.W.2d at 636.

 As to a credit or a setoff in partition for rental value of property, a party out of possession would not normally be entitled to reimbursement if he was not ousted from the property or in the absence of an agreement for the payment of rent. *Bass,* 811 S.W.2d at 782. However, if the party in possession is given credit for expenditures made in maintaining and improving the property, then the out-of-possession party would be entitled to reimbursement for his share of the reasonable rental value of the premises during the other party's exclusive possession. *Id.* Here, there is no evidence in the record to suggest that the appellant was ousted or that the parties had any rental agreement as to the mobile home. However, as noted, *supra,* the respondent claimed below that she was entitled to credit for various expenditures in maintaining and improving the property such that the appellant would be entitled to some credit for the rental value of the mobile home during the respondent's exclusive possession.

The record indicates that the issues of the various expenditures claimed by the parties for reimbursement in partition were left undecided by the trial court. Essentially, the trial court found that the equity in the mobile home was less than what the respondent was "owed" by the appellant for various expenditures, without making any express or implied determinations as to the fair market value of the mobile home and how much was owed for what. In addition, the record was undeveloped as to this issue. Hence, because

the record is insufficient to allow us to determine what, if any, expenditures should be reimbursed to the parties, we cannot enter a final judgment under Rule 84.14 as to the respondent's partition claim. Consequently, we are compelled to reverse and remand for further proceedings consistent with this opinion.

In setting forth the controlling law as to reimbursement of expenditures for finance payments, taxes, insurance, and necessary repairs and improvements, we are mindful of the fact that it is contrary to what this court held in *Lemay*. There, this court held that the law of partition did not authorize the trial court to award the property in question, in kind and in its entirety, to the respondent Lemay, while requiring him to reimburse the appellant Hardin $3,875 for repairs and improvements to the property. *Lemay*, 48 S.W.3d at 62.

In *Lemay*, the plaintiff (respondent) brought an action to partition real property that was titled in both his name and the name of his girlfriend (appellant), in contemplation of their marrying, which never occurred. It was undisputed at trial that the appellant never contributed anything to the acquisition of the property. However, she "did contribute to the home by painting and cleaning it." *Id.* at 61. The trial court awarded the property in kind, in its entirety, to the respondent, and awarded the appellant $3,875 "as reimbursement for her contributions to the home." *Id.* On appeal, the appellant claimed that the trial court erred in awarding the respondent the entirety of the property. This court determined that the trial court had no authority in a partition action to award the whole of the property to the respondent, while ordering him to pay the appellant $3,875, reflecting her contribution to the property, stating that "[a]lthough her argument is flawed, we nevertheless recognize that the relief granted by the trial court to each party was erroneous." *Id.*

In reversing and remanding, the *Lemay* court concluded that the only way to "[a]llow [the respondent] to keep the property and give the trial court the authority to enter judgment in favor of [the appellant] for her contributions to the property . . . [was] to allow the parties to amend their pleadings [on remand] to add a claim for quiet title, *quantum meruit*, or other appropriate causes of action." *Id.* at 64.

While it is true that the trial court in *Lemay* was not authorized, under the law of partition, to enter a money judgment against the respondent for the $3,875 in improvement and repairs made by the appellant, *Hartog*, 615 S.W.2d at 638, based on our reading of existing case law, which we discuss, *supra*, it was incorrect for the *Lemay* court to conclude that the court was not authorized in partition to award the respondent 100% of the property in kind and order the appellant reimbursed for her expenditure of $3,875 in repairs and improvements. Inasmuch as the appellant made no contribution to the acquisition of the property, the trial court, under the law of partition, as discussed, *supra*, was authorized to award 100% of the property in kind to the respondent and to place an equitable lien thereon in favor of the appellant, for the reimbursement of the $3,875 for repairs and improvements. Thus, to the extent that *Lemay* holds to the contrary, it should not be followed.

### Conclusion

The judgment of the Circuit Court of Platte County is reversed and remanded for further proceedings consistent with this opinion.

BRECKENRIDGE, P.J., and HOWARD, J., concur.